***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modification.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was a duly qualified self-insured at all times relevant with Crawford and Company as its servicing agent.
4. The parties stipulated that plaintiff's average weekly wage is $248.73, yielding a compensation rate of $165.82.
5. The parties stipulated that plaintiff has received no wages or other compensation since January 19, 1999.
6. The parties stipulated to plaintiff's medical records from Orthopedic Center for Northeastern North Carolina, Pro Active Therapy, Inc., Perdue Wellness Center, Southeastern Neurologist Group, P.C., Dr. Kevin Speer and Dr. Anna Bettendorf.
7. The parties stipulated to the cognitive ability test of plaintiff by Edward V. English, M.A.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modification and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 41 years old and had completed the 10th grade. Her intelligent quotient (IQ) qualifies as mild mental retardation with literacy and arithmetic levels in the low elementary school level.
2. On January 19, 1999, plaintiff was employed with defendant in the position of meat dropper, a production line job which involves working at a conveyor belt and placing meat on color-coded sections of the conveyor belt.
3. On January 19, 1999, plaintiff attempted to move a box of chicken and ice from the floor to her workstation stand, which was at plaintiff's waist level. Plaintiff previously relied upon male co-workers to place the chicken and ice boxes on her work-stand, but attempted to do so on this occasion as no male co-workers were available. This action was not within plaintiff's usual and customary job duties.
4. Upon lifting the box, plaintiff experienced sudden onset of pain in her chest and left shoulder area. Plaintiff reported this pain to her supervisor and was sent to the Wellness Center. Plaintiff told Dr. Melvin Clayton, an on-site physician, that she thought she was having a heart attack. Due to the complaints of chest pain, Dr. Clayton conducted an EKG which revealed no cardiac abnormality. Dr. Clayton noted that plaintiff had exquisite tenderness in the left third costochondral junction. Dr. Clayton removed plaintiff from work at that time. When plaintiff did not improve by her follow-up examination on January 26, 1999, Dr. Clayton referred plaintiff to Dr. Lawrence Larabee, an orthopedist.
5. Plaintiff first saw Dr. Larabee on February 9, 1999 and reported a work related injury with defendant. Dr. Larabee stated that plaintiff's diagnosis was consistent with internal impingement and rotator cuff inflammation. At a subsequent appointment on March 23, 1999, Dr. Larabee noted that plaintiff continued to have significant decreased range of motion and diagnosed plaintiff with adhesive capsulitis, also known as "frozen shoulder," of the left shoulder.
6. Plaintiff was notified of her termination from employment with defendant by letter dated August 12, 1999. At that time, plaintiff was continuing to receive medical treatment by Dr. Bruce Tetalman, a neurologist, as recommended by Dr. Larabee. Dr. Tetalman noted on July 28, 1999 that plaintiff's condition was the same or perhaps worse than at prior examinations.
7. Plaintiff was examined by Dr. Kevin Speer, an orthopedic surgeon at Duke University Medical Center, on October 25, 1999. Dr. Speer also diagnosed plaintiff with adhesive capsulitis.
8. Dr. Speer testified that plaintiff's adhesive capsulitis condition of the left shoulder was the result of the work injury that occurred on January 19, 1999 when plaintiff lifted the box of chicken and ice. Dr. Speer further stated that plaintiff was unable to move her left shoulder in any degree without severe pain and that plaintiff was disabled from employment with defendant and any other occupation that required movement of the left upper extremity.
9. Dr. Speer referred plaintiff to Dr. Anna Bettendorf, a physiatrist, for an evaluation of plaintiff's neck. During Dr. Bettendorf's examination on November 24, 1999, Dr. Bettendorf was able to distract plaintiff and move plaintiff's shoulder. After reviewing Dr. Bettendorf's report, Dr. Speer testified that he conducted a thorough examination and Dr. Bettendorf's report did not affect his diagnosis. Additionally, Dr. Bettendorf stated that she would defer her opinions on plaintiff's shoulder condition to the opinion of Dr. Speer.
10. Dr. Speer recommended that plaintiff undergo medical treatment in the form of medication and physical therapy to determine if such treatment would successfully alleviate plaintiff's present shoulder condition prior to surgical procedure being considered.
11. Plaintiff returned to Dr. Speer on May 8, 2001 complaining of continued left shoulder pain. On that date, Dr. Speer took some x-rays and ordered an MRI. Plaintiff's MRI taken on May 29, 2001, showed articular cartilage damage along with biceps pathology in the left shoulder. At this appointment Dr. Speer recommended that plaintiff consider outpatient surgery.
12. In his subsequent deposition taken on November 26, 2001, Dr. Speer stated that when he examined plaintiff in May 2001, some aspects of plaintiff's shoulder remained unimproved including the structural pathology of her shoulder, her impingement syndrome, the injured AC joint and the biceps tendon injury. Addressing the issue of plaintiff's adhesive capsulitis condition, Dr. Speer explained that it is often difficult to ascertain if there are any underlying elements that may have contributed to the adhesive capsulitis. In plaintiff's case, Dr. Speer indicated that over the passage of time, plaintiff was able to get most of her motion back. Because plaintiff was still suffering from pain in her shoulder, Dr. Speer stated that there were underlying structural problems and damage that required surgery.
13. On July 16, 2001 Dr. Speer performed diagnostic and operative arthoscopic surgery on plaintiff. Dr. Speer reported that there was no motion loss in plaintiff's shoulder with examination under anesthesia. Dr. Speer's postoperative diagnosis remained the same as his preoperative diagnosis of left shoulder impingement syndrome, AC osteoarthritis, and biceps pathology.
14. In his subsequent deposition, Dr. Speer testified that he still stood by his diagnosis in October 1999 of adhesive capsulitis and that the fact that he could move plaintiff's arm while under anesthesia meant that the passage of time was successful in restoring plaintiff's motion but not in relieving her pain.
15. Dr. Speer also indicated that as of his examination in May 2001, plaintiff would not have been able to perform her regular job with defendant-employer. Additionally, Dr. Speer stated that as of his last appointment with plaintiff on October 16, 2001 plaintiff was not at maximum medical improvement.
16. Plaintiff has been unable to return to work at her regular job with defendant or any other employer since January 19, 1999. Defendant has not offered plaintiff any suitable jobs. Plaintiff has been and continues to be disabled from employment with defendant or any other employment.
17. The competent and credible evidence in the record establishes that on January 19, 1999, plaintiff sustained an injury by accident to her left shoulder arising out of the course of her employment with defendant and that plaintiff's current shoulder condition is causally related to the compensable injury.
18. The Full Commission gives greater weight to the testimony of Dr. Speer than Dr. Bettendorf due to Dr. Speer's particular expertise in the treatment of adhesive capsulitis at Duke University Medical Center, and the fact that Dr. Bettendorf only examined plaintiff on one occasion and deferred to Dr. Speer's diagnosis.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On January 19, 1999, plaintiff sustained an injury by accident to her left shoulder arising out of the course of her employment with defendant. N.C. GEN. STAT. § 97-2(6).
2. As a result of plaintiff's injury by accident on January 19, 1999, plaintiff is disabled from any employment and is entitled to temporary total disability compensation at the rate of $165.82 per week from January 19, 1999 and continuing until plaintiff returns to work or until further Order of the Commission. N.C. GEN. STAT. § 97-29.
3. As a result of plaintiff's injury by accident on January 19, 1999, plaintiff is entitled to payment by defendant of all medical expenses, incurred or to be incurred, including those expenses incurred as a result of her adhesive capsulitis condition and further treatment of her left shoulder as recommended by Dr. Speer, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. GEN. STAT. § 97-25; N.C. GEN. STAT. § 97-2(19).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendant shall pay to plaintiff temporary total disability compensation at a rate of $165.82 per week beginning January 19, 1999 and continuing until plaintiff returns to work or until further Order of the Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendant shall pay for all of plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's adhesive condition and further treatment as recommended by Dr. Speer, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
3. As plaintiff has not yet reached maximum medical improvement of her shoulder condition, this Opinion and Award does not address the issue of permanency. However, in the event that the parties should be unable to agree on the amount of compensation for permanent functional impairment, if any, to her shoulder which may be due, either party may request a hearing before the Commission to resolve this issue.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
5. Defendant shall pay the costs.
This the ___ day of January 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb